THE PEOPLE OF THE STATE OF NEW YORK ex rel. MURRAY L. SWANSON, Appellant, against J. LOWELL FITZSIMMONS, as Sheriff of Jefferson County, Respondent.

Fourth Department, July 11, 1956.

236

*Robert B. Shaad* for appellant.

*Angus G. Saunders, District Attorney,* for respondent.

Bastow, J.  The relator appeals from an order dismissing a writ of habeas corpus and directing that he be delivered to the authorized officer of the State of Minnesota.  In September, 1953 the Governor of that State issued to the Governor of this State a request that relator be apprehended and delivered to the receiving officer.  It appears from this request and the underlying papers that no claim was made that relator had committed a crime in Minnesota and fled therefrom.  Instead the request plainly states that relator had committed acts in the county of Jefferson in this State, which acts intentionally resulted in " the crime of abandonment of his minor child " in the State of Minnesota.

Examination of the Uniform Criminal Extradition Act as adopted by our Legislature (L. 1936, ch. 892, as amd.; Code Crim. Pro., part VI, tit. IV, §§ 827–860) discloses that provision is made therein for two kinds of extradition.  Section 829 provides in part that " *it is the duty* of the governor of this state to have arrested and delivered up to the executive authority of any other state  *  *  *  any person charged in that state with treason, felony, or other crime, *who has fled from justice and is found in this state.*"  (Emphasis supplied.)  By this section the Governor of this State is charged with the duty of carrying out the provisions of the Federal Constitution and the acts of Congress enacted in pursuance thereof.  The area of inquiry and review both by the Governor and the courts is limited.  (Cf. *People ex rel. Higley* v. *Millspaw,* 281 N. Y. 441.)

Section 834 provides for extradition of persons who have not fled from justice and were not in the demanding State at the time of the commission of the alleged crime.  Permissive power is given the Governor of this State to grant a request from another State for the surrender of any person in this State charged with committing an act in this or any third State, intentionally resulting in a crime in the demanding State when the

acts would be punishable by the laws of this State. Further discretionary authority is given the Governor to make any such surrender conditional upon agreement of the executive authority of the demanding State that the person to be surrendered will be accorded certain rights as set forth in the section.

When the enactment of present section 834 was first considered it was recognized that any local law enacted' in conflict with the Federal statutes authorizing the apprehension, arrest and transportation across State lines of fugitives from justice (U. S. Code, tit. 18, §§ 3182, 3194) would be unconstitutional. It was further recognized that any law extending beyond those provisions must depend for its enforcement upon comity only. (1935 Report of N. Y. Law Rev. Comm., p. 119.) It is unnecessary to here review the history of section 834 but it should be remembered that Governor Lehman vetoed the 1935 enactment. (See Public Papers of Governor Lehman, 1935, p. 244.) The following year the proposed section was radically amended to give the Governor discretionary authority to make a conditional surrender. It is interesting to note that the 1935 bill passed by the Legislature and vetoed by Governor Lehman did not contain two important provisions inserted in the law enacted in 1936. These were discussed in the following fashion by the Law Revision Commission in its 1936 report (p. 41): " Thus, extradition under this section is not authorized unless the very act with which the person demanded is charged would be punishable in this state if the results complained of by the demanding state had occurred, geographically, in this state. Further, in order to prevent use of extradition to acquire jurisdiction of a person for prosecution for an offense for which he could not be extradited, the governor may, if he deems it necessary, make extradition in such cases conditional upon agreement by the executive authority of the demanding state that no prosecution of the extradited person shall be made except upon the specific charge for which he is extradited. These additions provide careful safeguards against abuse of extradition procedure in this type of case."

Thus, we see that section 829 implements the provisions for extradition in the Constitution of the United States (U. S. Const., art. IV, § 2, 2d par.) while " Section 834 represents the exercise of the residuum of sovereignty of the State of New York in the field of extradition. The Federal Constitution provides for the extradition of fugitives from justice. Section 834 provides for the extradition of those who are not fugitives from justice." (*People ex rel. Waldman* v. *Ruthazer*, 2 Misc 2d 297, 299.) Section 835 of the code provides for the issuance of the

warrant of arrest by the Governor in either kind of extradition and "If the Governor decides that the demand should be complied with, he shall sign a warrant of arrest * * *. The warrant must substantially recite the facts necessary to the validity of its issuance."

It thus appears that the Governor of Minnesota made his request for the apprehension of relator pursuant to the provisions of section 834. The then Governor of this State, however, acted thereon by issuing a fugitive warrant pursuant to section 829. The recitative portion of the warrant clearly mistakes the import of the request because it is stated that "It having been represented to me by the Governor of the State of Minnesota that [relator] is a fugitive 'from justice and stands charged in that State with having committed therein, the crime of Abandonment of His Minor Child which the said Governor certifies to be a crime under the laws of said State, and that the said accused has fled therefrom and taken refuge in the State of New York". The underlying papers, of course, make no such representation. Both the request of the Governor and the application of the Minnesota prosecutor claimed that relator had committed certain acts in this State which intentionally resulted in the commission of a crime in Minnesota. The distinction between the two kinds of warrant is recognized by the Executive Department in this area of procedure. See, for instance, warrant of Governor of this State issued pursuant to section 834 in *People ex rel. Faulds* v. *Herberich* (276 App. Div. 852, Record on Appeal). ·

The question is thus posed as to whether relator may be transported to Minnesota as a person who has committed a crime in that State, fled from justice therefrom and taken refuge in this State when in fact it is only claimed that while residing in this State he has committed certain acts herein intentionally resulting in a crime in the foreign State. We think not. Sufficient has been shown to demonstrate the dissimilarity of the two statutory provisions. One mandates the Governor of this State—the other is an application for the exercise of discretion on his part. Moreover, before the Governor may act under the permissive statute he must determine not only that the acts committed in this State intentionally resulted in a crime in the foreign State but in addition that "the acts for which extradition is sought would be punishable by the laws of this state". Furthermore, in this kind of extradition the Governor is authorized in his discretion to attach conditions to the surrender.

It is not necessarily deemed determinative of this issue but attention should again be directed to the provision in section 835

requiring that the warrant "must substantially recite the facts necessary to the validity of its issuance." Courts in other jurisdictions have held that the failure to comply with this provision invalidates the warrant. (*Stobie* v. *Barger,* 129 Col. 222; *Ex Parte Kaufman,* 73 S. D. 166.) In the *Kaufman* case (*supra*) the court said (p. 171) : "Although appellant's objection to the warrant may be regarded as more or less technical, of substantial concern is his right under the law to be dealt with in a manner befitting the established facts. The requirement of SDC 34. 1707 [N. Y. Code Crim. Pro., § 835] that the warrant substantially recite the facts necessary to the validity of its issue contemplates a service of process from which a party charged as appellant may learn, among other things, that the Governor has in fact exercised the discretion with which he is clothed under SDC 34. 1706 [N. Y. Code Crim. Pro., § 834]. We think we must recognize the declared distinction and sustain appellant in his asserted stand that he be surrendered, if he is to be extradited, not as a fugitive from justice, but as provided by the section of our code last cited."

The lower court dismissed this contention with the statement that a verbatim recital in the warrant is not a necessity and that substantial recital of facts necessary to the validity of its issuance is all that is required. There can be no disagreement with that view but here the sufficiency of the recital is not under attack but rather that the facts are incorrectly stated and grievously so. The issue here presented is whether the Governor of this State considered and passed upon this request under section 829 or section 834. In the one case he was mandated to issue the warant. In the other he had discretionary authority to issue or refuse to issue. It appearing from the warrant that the application was considered and acted upon as a true fugitive case where the relator had fled from justice in the foreign State it is difficult to understand how this is remedied because the Minnesota papers disclosed the true facts. Otherwise stated, there is no evidence that the Governor exercised the discretion vested in him but rather treated the request as one that he was mandated to perform.

It is recognized that the framers of the Uniform Criminal Extradition Act may have relied to some extent upon the holding in *People ex rel. Jourdan* v. *Donohue* (84 N. Y. 438) when they incorporated the provision requiring the warrant to substantially recite the facts. (See 9 U. L. A. 196, Commissioners' Note; 1935 Report of N. Y. Law Rev. Comm., p. 121.) These comments, while entitled to consideration, do not subtract any meaning from the plain language of the statute enacted by our

Legislature that the warrant "must substantially recite the facts necessary to the validity of its issuance." It has been written in this area of statutory construction that "It is a safe rule to consider the revisors' notes as explaining the object, but not as limiting the extent of the law, especially where, as in this case, the language is clear and unambiguous." (*Stephens* v. *People*, 19 N. Y. 549, 563.)

The order appealed from should be reversed upon the law, without costs, and the writ sustained without prejudice to the right of the officials of the demanding State to renew the application to the Governor of this State.

WILLIAMS, J. (dissenting). I do not question that there is a distinction between the types of extradition governed by sections 829 and 834 of the Code of Criminal Procedure. It is the difference between constitution and comity, although even in the case of a fugitive from justice there is no practical method of coercing the Governor of this State to perform the duty imposed upon him by the former section and by the Constitution and laws of the United States (*Commonwealth of Kentucky* v. *Dennison, Governor of Ohio*, 24 How. [65 U. S.] 66). But from the premise that there is a substantive difference between the two types of extradition, it does not necessarily follow that the warrant in this case is jurisdictionally void. It is entirely clear from a reading of the Uniform Criminal Extradition Act that the same procedure was intended to control both types of extradition and the only provision governing the contents of the warrant is the requirement of section 835 that it "substantially recite the facts necessary to the validity of its issuance." Unless that statute is to be judicially amended, the warrant in this case should not be held void.

The Commissioners on Uniform State Laws cited *People ex rel. Jourdan* v. *Donohue* (84 N. Y. 438) as one of the cases on which section 835 is founded (9 U. L. A. 196). In that case the return to a writ of habeas corpus embodied the warrant of extradition, but the Governor declined to furnish the papers on which the warrant was issued. The Court of Appeals, affirming an order dismissing the writ, stated two rules (pp. 441, 442): (1) "where the preliminary papers upon which a warrant of extradition has been granted are produced, and are before us, it is our right and our duty to examine them, and judge and determine, when our process is invoked, whether they are sufficient, under the law, to justify the warrant of extradition." (2) "Where, however, the papers upon which the warrant is found are not produced, but are withheld by the Executive, in the

exercise of official discretion and authority, we can look, only to the warrant it self, and its recitals, for the evidence that the essential conditions of its issue have been fulfilled." The Law Revision Commission, in recommending enactment of the uniform act, stated that the sentence above quoted from section 835 " is added to take care of warrants issued by the Governor which are not accompanied by the documents on which the warrant is based and to provide knowledge of the facts sufficient to withstand *habeas corpus* proceedings." (1935 Report of N. Y. Law Rev. Comm., p. 121.) Therefore, the requirement of section 835 that the warrant " substantially recite the facts necessary to the validity of its issuance " was intended to apply primarily to cases in which only the warrant is returned. In the present case, both the warrant and the underlying papers are returned, and for " knowledge of the facts sufficient to withstand *habeas corpus* proceedings " we are not dependent upon the recitals of the warrant. I would hold that the warrant sufficiently satisfies section 835 because it recites receipt of the papers enumerated in section 830. As to the representations contained in those papers, we need not rely on the warrant alone, but may examine the papers themselves, and when that is done the erroneous recital in the warrant that relator had been represented to be a fugitive from justice will be seen to be a technical and harmless error.

Our courts have been liberal in sustaining extradition papers in spite of unsubstantial errors. For example, the requisition in *People ex rel. Higley* v. *Millspaw* (281 N. Y. 441) did not state that the accused was in the demanding State at the time of the crime. The Criminal Code (§ 830) expressly provides that " No demand for the extradition of a person charged with crime in another state shall be recognized by the governor unless in writing alleging that the accused was present in the demanding state at the time of the commission of the alleged crime ". Yet, notwithstanding the express mandate of the statute, the Court of Appeals considered the demand only technically insufficient, since the underlying papers recited the defendant's presence in the demanding State at the time of the offense. " Thus the Governor of New York had before him all the requisite facts to justify him in issuing the warrant of rendition " (p. 446).

*Ex Parte Kaufman* (73 S. D. 166, 170), quoted in the majority opinion, is distinguishable. The requisition in that case stated that the crime was committed in the demanding State, that defendant had fled from justice and taken refuge in the asylum State, and that the demand was made " pursuant to the provisions of the Constitution and laws of the United States ". In

fact, however, the defendant was not a fugitive and the complaint did not proceed on that theory, so that the requisition was inconsistent with the factual showing on which it was predicated. In the present case, all of the papers submitted by Minnesota, from the verified complaint to the requisition, charge that the relator committed an act in New York intentionally resulting in the commission of a crime in Minnesota, but the warrant issued by the Governor of this State recited that it had been represented to him that relator had committed a crime in Minnesota and had fled from justice. That is a technical error which should be disregarded. It is reasonable to require the demanding State to indicate clearly the theory upon which rendition is sought. But when that is done, it is quite another thing to deny rendition because of a formal error contained in the warrant issued by the Governor of the asylum State.

I would affirm this order.

All concur, except VAUGHAN and WILLIAMS, JJ., who dissent and vote for affirmance, in an opinion by WILLIAMS, J., in which VAUGHAN, J., concurs. Present — McCURN, P. J., VAUGHAN, KIMBALL, WILLIAMS and BASTOW, JJ.

Order reversed on the law, without costs, and writ sustained without prejudice to the right of the officials of the demanding State to renew the application to the Governor of this State.