THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v THOMAS CONYERS, Appellant.

First Department, December 21, 1978

## APPEARANCES OF COUNSEL

*Randolph Volkell* of counsel *(Diana A. Steele* with him on the brief; *William E. Hellerstein* and *Martin Erdmann,* attorneys), for appellant.

*Meredith Anne Feinman* of counsel *(Robert M. Morgenthau, District Attorney),* for respondent.

**OPINION OF THE COURT**

FEIN, J.

Defendant Conyers appeals from a judgment convicting him following a jury trial on two counts of robbery in the first degree, two counts of robbery in the second degree, attempted assault in the first degree, possession of a dangerous weapon in the second degree and possession of a dangerous weapon in the third degree. The issue here is the propriety of the cross-examination by the prosecutor as to defendant's silence at the time of his arrest. Did such cross-examination infringe upon defendant's constitutional right to remain silent?

The evidence on behalf of the prosecution was that on August 28, 1975, defendant and codefendant Saunders accosted Marion Dantzler and Grace Johnson in the street at gunpoint and directed them to enter a hallway at 328 East 126th Street in Manhattan. Defendants allegedly took money from Dantzler and a purse containing cash from Johnson. After tying up the victims, defendants fled. Dantzler, however, untied himself and ran from the building in pursuit of Conyers and Saunders. A tow truck operator, Frank Moreau, aided in the chase. It appears that Saunders fired a shot at Dantzler during the chase, although Moreau testified he thought that Conyers had fired the shot. Police officers who subsequently joined in the chase apprehended both Conyers and Saunders. A search of Conyers yielded the gun and Johnson's purse containing $92.70. Saunders was found in possession of $89.04 and a piece of white rope similar to that which had been used to tie up Dantzler. Defendants were taken to the precinct where Johnson and Dantzler identified them. Dantzler told the police that $250 to $300 had been taken. Johnson claimed about $200 had been removed from her purse.

The defense version of the events differed. Conyers testified that he had placed a bet with Dantzler the day before the alleged robbery. After ascertaining that he had won, he went to Dantzler's "numbers spot" on the third floor of 320 East 126th Street to collect. An argument ensued when Dantzler denied taking the bet. After about five minutes, Dantzler pointed to money on a table and told Conyers to go get it. Conyers saw a black pouch on the table. As he reached for it Dantzler drew a gun. Conyers testified that he knocked the gun out of Dantzler's hand and that the gun discharged as it hit the floor. Conyers picked up the gun and the pouch while

Saunders took some rope and tied Dantzler's hands. Defendants left the apartment heading for Saunders' car. When they observed Dantzler chasing them, screaming that he wanted his gun back, Conyers and Saunders ran, pursued by Dantzler, until police officers apprehended them at 124th Street.

On cross-examination, the prosecutor inquired over objection as to whether Conyers had told the police that the gun was not his, that it was Dantzler who had drawn the gun and Conyers had taken it from Dantzler in self-defense:

"Q. Did you, at any time, tell the police that the gun was not yours, that in fact Mr. Dantzler had drawn the gun on you and that you had taken the gun away from him more or less in self defense? * * *

"A. I didn't say anything to the police officers.

"Q. Did you, at any time, tell the police that the money and the pouch, the money in the pouch was yours and that it was owed to you as a debt?

"A. No."

Conyers contends that the cross-examination concerning his silence when arrested was improper since it infringed upon his constitutional right to remain silent, his privilege against self incrimination. He asserts that the court committed reversible error when it permitted, over Conyers' objection, inquiry by the prosecutor as to Conyers' silence when he was arrested. The District Attorney contends that the inquiry was not directed against Conyers' exercise of his right to remain silent. The prosecutor's purpose was not to interfere with defendant's right to remain silent, but rather to demonstrate that defendant's story was a recent fabrication. The inquiry sought only to ascertain whether Conyers told the police that (1) the gun was not his; (2) he had taken it away from Dantzler in self-defense after the latter had drawn the gun on him; (3) the money in the pouch was owed to him in payment of a debt.

■ In her summation, alluding to the defense testimony, the prosecutor relied on Conyers' failure to speak at the time of his arrest to demonstrate that his story was a recent fabrication. The inquiry and summation plainly raised before the jury and called to its attention the fact that Conyers had remained silent at the time of his arrest and had not offered to the police the exculpatory account of the events as related by him upon the trial.

Such cross-examination and summation improperly impinged upon Conyers' right to remain silent. He had no obligation to speak. Under the circumstances of this case, it constitutes prejudicial error.

A defendant's silence at the time of his arrest may not be used against him in subsequent judicial proceedings *(People v Rutigliano,* 261 NY 103). Such silence at the time of arrest may not be used to impeach a defendant upon the trial *(Doyle v Ohio,* 426 US 610). To hold otherwise would penalize a defendant for the exercise of his constitutional privilege to remain silent while under custodial interrogation. In *People v Arce* (42 NY2d 179) counsel for codefendant Arce inquired of Camara as to whether Camara, at the time of his arrest, told the police about the shootings. After an objection to the question was overruled, Camara answered in the negative. However, subsequently, when the Assistant District Attorney posed a similar question to Camara, the Trial Judge sustained the objection and instructed the jury to the effect that when a person is under arrest he is not legally obligated to say anything to the police or to anyone else and that no unfavorable inference may be drawn against a defendant by reason of his silence. The Court of Appeals ruled that the question propounded by the prosecutor was "improper" even though unanswered, since it brought "to the attention of the jury" the fact that defendant Camara had been silent at the time of his arrest. However, although the court found error in even asking the question, it was ruled to be nonprejudicial by reason of the clear and direct curative instructions to the jury which were given by the trial court. *(People v Arce,* 42 NY2d 179, 187, *supra.)*

Here, however, the trial court overruled the objection, in effect directing defendant to respond as to his failure to relate to the police his exculpatory account of the events. Defendant's testimony was in direct conflict with that of the victim, Dantzler. The credibility of defendant and Dantzler, therefore, was a prime issue. Under the circumstances, in a case where resolution of the issue may well have depended upon the jury's evaluation of defendant's credibility as opposed to that of the chief prosecution witness, the inquiry relating to Conyers' postarrest silence may have had such a significant prejudicial effect as to deprive him of his right to a fair trial. To cross-examine a defendant as to his postarrest silence and to comment upon such silence in summation penalizes a

defendant for exercising his Fifth Amendment privilege to remain silent when he is under police custodial interrogation (*Miranda v Arizona,* 384 US 436, 468). It is an error of constitutional dimensions, violative of the due process clause of the Fourteenth Amendment. (See *Doyle v Ohio,* 426 US 610, 619, *supra.)* Under the circumstances of this case, the error is not harmless beyond a reasonable doubt. *(Chapman v California,* 386 US 18; *People v Crimmins,* 36 NY2d 230.)

As stated by the Second Department in *People v Smoot* (59 AD2d 898, 899): "Although not every violation of a defendant's constitutional rights at trial constitutes reversible error (see *Chapman v California,* 386 US 18, 24), we hold that in this case, where the evidence against defendant cannot be characterized as overwhelming, where a review of the testimony of the principal witnesses against him reveals certain inconsistencies and contradictions, and where so much depended upon the jury's evaluation of the credibility of the two main prosecution witnesses on the one hand, and of the defendant and his two alibi witnesses on the other, that there was substantial prejudice to the rights of the defendant so as to deprive him of a fair trial. The law is clear that the prosecution may not comment upon the postarrest silence of a defendant and that a defendant has no obligation, when in custody, to tell either the police or the District Attorney that he has an alibi or other exculpatory defense. To cross-examine the defendant about his postarrest and pretrial silence concerning his alibi defense and to comment upon such silence in summation is fundamentally unfair and a denial of the right to due process (see *Doyle v Ohio,* 426 US 610; *United States v Hale,* 422 US 171; *People v Christman,* 23 NY2d 429, 433; *People v Rutigliano,* 261 NY 103; *People v. Gambino,* 52 AD2d 957, 958; *People v Felcone,* 43 AD2d 976, 977)."

Similarly here, although our case does not involve an alibi defense, cross-examination and summation by the prosecution highlighted for the jury the silence of defendant at the time of his arrest and his failure to offer to the police the exculpatory statement testified to at trial, despite the well-settled law that a defendant in custody has no obligation to speak. This is not a case where a defendant because of his office or job may have a duty to speak. (See *People v Rothschild,* 35 NY2d 355.)

The cross-examination extracted from defendant the fact that he said and did nothing. The summation used defendant's silence and inaction to ground an attack upon his credibility

and to buttress Dantzler's credibility in his contrary account of the events. Since defendant was plainly under no duty to talk at all, the cross-examination and summation by the prosecutor as to defendant's silence at the time of his arrest was improper and constituted a denial of defendant's right to a fair trial. The error was compounded by the inquiry and comments concerning defendant's refusal to sign the police property clerk's voucher for the money and pouch taken from him by the police at the time of his arrest.

■ Upon this record there must be a new trial. Upon remand the sixth count for attempted felony assault must be dismissed as jurisdictionally defective. Like attempted felony murder, there is no such crime as attempted felony assault. (Penal Law, § 120.10, subd 4; see *People v Hassin,* 48 AD2d 705; *People v Hendrix,* 56 AD2d 580.)

We note that the points relied on here were not raised in *People v Saunders* (63 AD2d 868, mot for lv to app den 44 NY2d 956).

Accordingly, the judgment, Supreme Court, New York County (Scott, J.), rendered April 26, 1976, convicting defendant Conyers should be reversed, on the law, the sixth count of the indictment charging defendant with attempted felony assault dismissed as jurisdictionally defective, and the matter remanded for a new trial.

Kupferman, J. P., Birns, Lane and Sandler, JJ., concur.

Judgment, Supreme Court, New York County, rendered on April 26, 1976, unanimously reversed, on the law, the sixth count of the indictment charging defendant with attempted felony assault dismissed as jurisdictionally defective, and the matter remanded for a new trial.