■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MELVIN STREETER, Appellant.—Judgment, Supreme Court, Bronx County, rendered August 8, 1977, convicting defendant of an attempt to commit murder in the second degree and an attempt to commit assault in the first degree and sentencing him thereupon to concurrent terms of 5 to 15 years and 2⅓ to 7 years, respectively, unanimously reversed, on the law, and the matter remanded for a new trial. In this assault case, involving two sharply conflicting factual versions, defendant took the stand and testified to facts supporting a defense of justification. On cross-examination, the prosecutor was allowed, over objection, to show that defendant had never made a statement or complaint consistent with such version of the incident, either at the scene where he was arrested, or later. This was fundamentally unfair and violative of due process. *(Doyle v Ohio*, 426 US 610, 617-618; *People v Conyers*, 65 AD2d 437.)* The error was compounded when, on summation, the prosecutor improperly contrasted defendant's silence at the scene with a statement at the scene by Juan Ramos, a prosecution witness, to the responding officers. Worse yet, the evidence of what Ramos said was inadmissible hearsay. He was allowed to testify, over objection, that he had told the police "that was the knife with which [defendant] had stabbed my brother." Detective Kearns twice testified, also over objection, that Ramos told him at the scene that "[his] brother had been stabbed * * * and [Jones, defendant's witness] tried to take the knife." The receipt in evidence of this hearsay enabled the prosecution to bolster its witness's testimony by showing prior consistent statements. The court was to aggravate this error by instructing the jury in its charge to consider prior consistent statements, as well as inconsistent statements, in assessing a witness's credibility. Also, the charge on interested witnesses was less than balanced, focusing, as it did, on Jones, the defense witness. Finally, a series of prosecutorial improprieties throughout the trial had a cumulative effect which would, in any event, mandate reversal. Two instances of such conduct are sufficient to illustrate the point. In his opening the prosecutor asserted that defendant, if he took the stand, would lie, and in his summation admonished the jury that "To fail to convict this defendant * * * would be under the facts failure to enforce the law", and that each juror represented thousands of people and that it was now their "job" to convict defendant since "our system is only as

strong as those who are willing to keep it strong." Concur—Evans, J. P., Fein, Sullivan, Lupiano and Lynch, JJ.