OPINION OF THE COURT
Robert Haft, J.
Petitioner has instituted this writ of habeas corpus to test the legality of a warrant issued by the Governor of this State on a requisition from the Governor of Wisconsin demanding petitioner’s extradition to that State to be tried for the crime of burglary.
Zilma Bond, petitioner herein, was arrested in New York by Federal Marshals on March 12, 1981, on a charge of interstate flight to avoid prosecution. On March 24, 1981, petitioner was turned over to State authorities and arraigned on a fugitive complaint.
Petitioner was remanded to the custody of Benjamin Ward, Commissioner of Correction, City of New York, *63 respondent herein. Bail conditions were later set and petitioner was released on bail on April 18, 1981. On May 26, 1981, the Governor of Wisconsin signed a request, supported by affidavits, for the extradition of petitioner to Wisconsin. On June 23, 1981, the Governor of New York issued a warrant for petitioner’s extradition. Petitioner’s bail status was continued by consent. He then filed the instant application for habeas corpus relief, the basis being that the Governor’s warrant ordering petitioner’s extradition to Wisconsin is not based upon probable cause, in that there is insufficient evidence to believe that the petitioner committed the burglary there charged.
The petition presents this court with a unique opportunity to attempt to resolve some of the confusion surrounding the issue of “probable cause” in extradition proceedings. Two novel questions are presented by this case: The first — whether the Supreme Court’s decision in Michigan v Doran (439 US 282) has overruled a line of older New York cases which permit the habeas court to review the probable cause for issuance of a Governor’s warrant; the second — whether probable cause to extradite can be based solely on hearsay allegations. This court finds that it is not precluded from a probable cause review by Doran and that in an appropriate case hearsay alone may support a finding of probable cause.
In reaching these conclusions the analysis must necessarily focus on the recitals contained in the papers accompanying the requisition by the Governor of Wisconsin. The detailed affidavit that accompanied the requisition in this case was executed by a Detective Dobesh on May 13,1981. The information recited was obtained from various sources. Two police officers known personally to Dobesh stated that at about 4:45 a.m. on September 9, 1974, they were called to investigate a burglary at the Hometown Ice and Coal Company building in Milwaukee, Wisconsin. They caught two persons running from the building. One officer then went to the second floor of the building and found an opened walk-in vault filled with tear gas. In the same room were screwdrivers, crowbars, acetylene torches and other tools. Also discovered was a hole in the skylight. When the officers inspected the roof of the building next *64 door, they discovered Zelma Bond lying face down with cotton gloves in one hand and a flashlight in the other. Boxes of calculators were found between the two buildings. The comptroller of Hometown informed Dobesh that the calculators were the property of the company and that none of the three defendants had been given permission to enter.
The Dobesh affidavit further recited a confession to the crime by one of the alleged participants which also implicated Bond. Also annexed to that affidavit was a copy of the burglary complaint sworn against Bond by Dobesh on September 9, 1974. Dobesh stated that he was called upon to investigate the burglary, and he also corroborated the statements by the other two officers.[1]
The extradition clause of the United States Constitution (art IV, § 2, cl 2) provides that: “A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having jurisdiction of the Crime.”
This provision is implemented by the Uniform Criminal Extradition Act, which has been adopted by most States, including New York and Wisconsin (CPL art 570; Wise Stats Ann, ch 964). CPL 570.06 and 570.08 make it the duty of the Governor of this State, upon proper demand from the executive authority of any other State, to extradite any person “substantially charge[d]” in that State with a crime who has fled to this State.
This court is competent, of course, to rule on the propriety of the writ (CPLR 7002, subd [b], par 3). The Uniform Commercial Extradition Act expressly preserves the right of an accused to the extraordinary writ (CPL 570.24; Wise Stats Ann, § 964.01). And, in any case (even though a petitioner has been released on bail), impending extradition is a deprivation of liberty sufficient to entitle a petitioner to apply for habeas relief. (Ierardi v Gunter, 528 F2d *65 929; Kirkland v Preston, 385 F2d 670; People ex rel. Cooper v Lombard, 45 AD2d 928; see CPLR 7002, subd [a].)
When the Governor of a sister State makes a demand for extradition, “[t]he area of inquiry and review both by the Governor and the courts is limited.” (People ex rel. Swanson v Fitzsimmons, 2 AD2d 235, 236.) Nevertheless, the courts of New York have consistently held that there must be a probable cause to extradite. (People ex rel. Cooper v Lombard, supra; People ex rel. Miller v Krueger, 35 AD2d 743; People v Artis, 32 AD2d 554.) As the Appellate Division, Fourth Department, has stated: “The asylum State has a vital interest in the liberty of its citizens and other inhabitants, and * * * it is only a slight burden on a demanding State to show probable cause for the issuance of a warrant”. (People ex rel. Cooper v Lombard, supra, at p 928.) If there is no probable cause to believe that petitioner committed the crime charged, it would be unjust to permit his extradition, especially since no magistrate or neutral judicial officer in Wisconsin has determined that probable cause exists. The hardship to petitioner if this court cannot address the probable cause issue is staggering; at best, extradition “means an extended period of detention, involving custody pending administrative arrangements in two states as well as forced travel in between. At worst it means separation from a familiar jurisdiction and effective denial of the support of family, friends and familiar advisors.” (Ierardi v Gunter, supra, at p 930; see, also, Matter of Consolvi, 376 Mass 699.)
In addressing the issue of probable cause, it should be clear that the requirement is constitutional, not merely statutory. Some courts have perceived as one and the same the probable cause inquiry and the separate issue of whether the relator is adequately “charged” within the meaning of the Uniform Criminal Extradition Act. (See People ex rel. Pray v Allen, 63 AD2d 1056; People ex rel. Cook v Gavel, 51 AD2d 641; People ex rel. Donohoe v Andrews, 104 Misc 2d 384; People v Miller, 74 Misc 2d 806; Bailey v State of Indiana, 260 Ind 448; Brode v Power, 31 Conn S 411; Rayburn v State of Alabama, 366 So 2d 698 [Ala], affd 366 So 2d 708.) In some of these decisions the courts involved have assumed that in order to be “charged” *66 or “substantially charged” under the applicable statute there must be probable cause. (See People v Miller, supra; Brode v Power, supra; Rayburn v State of Alabama, supra.) There seems little reason why probable cause should be equated with the statutory extradition requirements. Our Legislature could not have so intended because at the time of the enactment of the Uniform Criminal Extradition Act (L 1936 in New York), the Fourth Amendment had not been made applicable to the States at all. Moreover, the Fourth Amendment, like the Fourteenth, is absolute on its face — it needs no statutory implementation to be operative. The application of the Fourth Amendment cannot be restricted by the Uniform Criminal Extradition Act, for if the statute is applied, only the “indictment, information or affidavit” submitted in support of the demand could be looked to. (CPL 570.08.) In contesting extradition, the burden is on the petitioner to show that the Governor has not complied with the statutory requirements.[2] (United States ex rel. Vitiello v Flood, 374 F2d 554; People ex rel. Pray v Allen, supra.)
On the other hand, where a probable cause challenge has been permitted, the burden is shifted to the respondent. (People ex rel. Gatto v District Attorney of Richmond County, 32 AD2d 1053; see Kirkland v Preston, 385 F2d 670, supra.) A separate, heightened scrutiny should be reserved for determination of the probable cause issue. (People ex rel. Cooper v Lombard, 45 AD2d 928, supra; People v Artis, 32 AD2d 554, supra; People ex rel. Gondolfo v Lindemann, 63 Misc 2d 773, affd 34 AD2d 1105; Kirkland v Preston, supra, at p 673.) The inquiry is limited to determining whether there is probable cause to believe the petitioner has committed the crime charged. (See People ex rel. Cooper v Lombard, supra; People ex rel. Gatto v District Attorney of Richmond County, supra.)
Has this seemingly established doctrine been altered or discredited by the Supreme Court’s decision in Michigan v Doran (439 US 282, supra)? Some language in Chief Justice Burger’s majority opinion suggests that even if the *67 demanding State has not made a probable cause determination, the asylum State may not review that issue. At the very beginning of the opinion, Chief Justice Burger writes (p 283): “We granted certiorari to determine whether the courts of an asylum state may nullify the executive grant of extradition on the ground that the demanding state failed to show a factual basis for its charge supported by probable cause.”
He goes on to state (pp 289-290):
“Once the governor has granted extradition, a court considering release on habeas corpus can do no more than decide (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive * * *
“To allow plenary review in the asylum state of issues that can be fully litigated in the charging state would defeat the plain purposes of the summary and mandatory procedures authorized by Art. IV, § 2.”
However, other language in the majority opinion couches the holding in much narrower terms (p 290): “[W]hen a neutral judicial officer of the demanding state has determined that probable cause exists, the courts of the asylum state are without power to review the determination.”
And, at the conclusion of the opinion (p 290): “We hold that once the governor of the asylum state has acted on a requisition for extradition based on the demanding state’s judicial determination that probable cause existed, no further judicial inquiry may be had on that issue in the asylum state.” (Emphasis added.)
If this last pronouncement does limit its holding, then Doran (supra) has no effect on the validity of previous New York cases insofar as they allow a probable cause determination where, as in the case at bar, none has been made by the demanding State. This interpretation of Doran would seem to be the one taken by its three concurring Justices. The concurring Justices would go even further — they would explicitly require probable cause review by the asy *68 lum State where, on the face of the demanding State’s demand, no finding of probable cause has been made. (Michigan v Doran, supra, pp 295-296.)
The Doran majority opinion barely mentions the underlying tension between the summary procedures mandated by the extradition clause and the Fourth Amendment’s absolute language. It seems highly doubtful that the Chief Justice meant to sweep aside the voluminous State and Federal case law on the point, without even discussing the public policy justification for asylum State Fourth Amendment review that has been put forward by many courts. Accordingly, this court agrees with the conclusion of the Fourth Circuit Court in Zambito v Blair (610 F2d 1192, 1194, n 3) that the scope of the holding in Doran is limited to cases where a judicial finding of probable cause has been made by the demanding State. In those cases only, probable cause review by the asylum State is precluded. Since no judicial officer in Wisconsin made a probable cause determination in petitioner’s case, it is therefore appropriate that this court undertake that analysis.
In reviewing probable cause, what are the standards to be applied by the asylum State? Petitioner argues that where extradition is challenged, hearsay evidence alone cannot support a finding of probable cause. He would have this court apply a stricter standard than in other probable cause evaluations where he concedes hearsay may be admissible. There are no New York cases squarely addressing the issue raised. Nevertheless, after applying established constitutional standards, this court must reject the argument.
Although extradition imposes a severe deprivation on the accused, the language of the Fourth Amendment does not distinguish between different types of seizures. To apply a different or higher standard of probable cause than in other cases, “would * * * be a * * * frustration of the extradition clause”. (United States ex rel. Grano v Anderson, 318 F Supp 263, 269, affd 446 F2d 272.) In considering whether there is probable cause to extradite, the examination must be the same as for any “in state” evaluation. (People ex rel. Miller v Krueger, 35 AD2d 743, supra; People ex rel. Gatto v District Attorney of Richmond County, 32 *69 AD2d 1053, supra; accord Pippin v Leach, 188 Col 385; State ex rel. Sieloff v Golz, 80 Wisc 2d 225.) Thus, the appropriate probable cause standard in extradition, as elsewhere, should be that enunciated by the Supreme Court in Gerstein v Pugh (420 US 103, 111): There must be facts and circumstances sufficient to warrant a prudent person in believing that the suspect has committed an offense.
That being said, how have our courts dealt with the specific question of whether hearsay can be appropriate evidence for a court’s evaluation of probable cause in extradition cases? In a few cases, where an affidavit was conclusory with no allegation of supporting facts or sources, it has been held to be insufficient. (People v Artis, 32 AD2d 554, supra; People ex rel. Cooper v Lombard, 45 AD2d 928, supra.) Sometimes, a court has implied that personal knowledge of the affiant is only one factor to be considered in evaluating probable cause. (See People ex rel. Cook v Gavel, 51 AD2d 641, supra.) In other cases, where both hearsay and other evidence were considered, probable cause was found, but no indication was given as to the weight accorded the hearsay evidence. (See People v Miller, 74 Misc 2d 806, supra; People ex rel. Gondolfo v Lindemann, 63 Misc 2d 773, supra.) Despite petitioner’s arguments to the contrary, none of the cases preclude a finding of probable cause based solely on hearsay evidence.
Courts in other jurisdictions which have considered the admissibility of hearsay evidence have found that it can be looked to if sufficiently detailed, if the sources of information are identified and if grounds for belief are stated. (Kirkland v Preston, 385 F2d 670, supra; Goeschel v Cronin, 196 Col 435; State ex rel. Sieloff v Golz, supra; Rayburn v State of Alabama, supra; Grubbs v State of Alabama, 363 So 2d 121 [Ala].) In Grubbs, the court specifically stated that hearsay alone was enough to establish probable cause. In Goeschel, the affidavit was based wholly on hearsay, albeit quite detailed. Though it was the only evidence bearing on probable cause the court upheld the Governor’s warrant.
Thus, under proper circumstances, hearsay alone can be sufficient to warrant a finding of probable cause to extra *70 dite. In the case at bar, the affidavit, although based on hearsay, is, as in Goeschel {supra), exceedingly detailed. It specifies many of the factors surrounding the investigation of the burglary and alleges how petitioner was found near the scene of the crime under incriminating circumstances. The primary sources of information are two police officers personally known to the affiant. The statement by petitioner’s alleged coconspirator is against his penal interest and probably admissible even at a trial, if he is “unavailable.” (People v Settles, 46 NY2d 154.) Additionally, there is a statement by an employee of the company allegedly burglarized and a statement on affiant’s personal knowledge is incorporated into the affidavit. On these facts, without doubt, there is probable cause to believe that petitioner participated in the crime of burglary under sections 943.10 (subd [1], par [a]) and 939.05 of the Wisconsin statutes. For the foregoing reasons this asylum State must honor the extradition demand and the writ must be dismissed. Petitioner is herewith remanded to the State of Wisconsin for further proceedings.

. As incorporated into the extradition affidavit, this complaint is hearsay because it constitutes a previous statement by the affiant. (Accord People v Streeter, 67 AD2d 877; People v Luciano, 64 AD2d 614.)

. In truth, the Governor can easily ward off such an attack since even conclusory language is sufficient to “charge” someone under the statute. (See People v Artis, 32 AD2d 554, supra; People ex rel. Bleecher v Silberglitt, 33 Misc 2d 236.)